[Cite as *Hinerman v. Grill on Twenty First, L.L.C.*, 2021-Ohio-859.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| STUART HINERMAN | : | JUDGES: |
|  | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
|  | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2020 CA 00054 |
| THE GRILL ON TWENTY FIRST, | : |  |
| LLC, ET AL | : |  |
|  | : | OPINION |
| Defendants-Appellants |  |  |

CHARACTER OF PROCEEDING:    Civil appeal from the Licking County Court
of Common Pleas, Case No. 2015 CV
01046

JUDGMENT:                                  Affirmed

DATE OF JUDGMENT ENTRY:        March 18, 2021

APPEARANCES:

For Plaintiff-Appellee                        For Defendants-Appellants

JONATHAN A. VELEY                       STEPHEN B. WILSON
2034 Cherry Valley Road                    35 South Park Place, Ste. 150
Newark, OH 43055                             Newark, OH 43055

*Gwin, P.J.*

{¶1} Appellants appeal the August 5, 2020 judgment entry of the Licking County Court of Common Pleas awarding appellee judgment: (1) against The Grill on Twenty First Street, LLC, and Eric Mason, jointly and severally, in the amount of $298,647.95, plus interest at 5% per year, and (2) against Twenty First Street Properties, LLC, and Mason, jointly and severally, in the amount of $229,374.50, plus interest at 5% per year.

*Facts & Procedural History*

{¶2} On December 7, 2015, appellee Stuart Hinerman filed a complaint against appellants Eric Mason ("Mason"), The Grill on Twenty First, LLC ("The Grill"), and Twenty First Street Properties, LLC ("Twenty First Street"). The complaint alleges Mason violated the terms of the operating agreements for The Grill and Twenty First Street by misappropriating funds for his own purposes or for the use of other parties for his benefit.

{¶3} Mason filed an answer and counterclaim for breach of contract on January 8, 2016. Mason alleged the operating agreements at issue required appellee to pay him for a share of the losses he purportedly sustained.

{¶4} Throughout the case, each of the parties filed numerous motions and responses, and had numerous discovery disputes. The trial court held multiple hearings and status conferences on the case.

{¶5} Relevant to this appeal, appellee filed a motion to compel and motion in limine on June 17, 2019, arguing appellants did not provide appellee with all of the documents appellants intended to use at trial. Appellants filed a response on June 19, 2019. The trial court held a hearing on July 9, 2019.

{¶6} The trial court issued a judgment entry on July 22, 2019 regarding appellee's motion in limine. The court disallowed appellants from introducing as evidence any documents not provided to appellee in discovery and stated the testimony of any witness, including Mason's accountant Michael Crumrine ("Crumrine"), would be excluded to the extent such testimony relies on or is based upon documents not provided to appellee. While appellants argued the documents were not in their possession because they were in the possession of Crumrine, the trial court found appellants could retrieve them from Crumrine; thus, if appellants failed to obtain these documents and provide them to appellee, appellants would be prohibited from introducing them into evidence, from testifying concerning their contents, or from having any witness testify concerning their contents.

{¶7} In the months after July of 2019, each party filed additional motions and responses. On January 27, 2020, the trial court issued an entry stating the "only way to fairly and impartially determine the factual allegations and issues in this case and to bring this case to conclusion * * * is to proceed with trial." The trial court stated in its entry, "Defendants may not introduce any documents or other evidence in support of any defense or counterclaim which have not been disclosed to Plaintiffs by the date of the filing of this Journal Entry."

{¶8} The trial court held a bench trial from June 22, 2020 to June 24, 2020.

{¶9} Appellants attempted to introduce a "thumb drive" into evidence that was not previously disclosed to appellee, and neither the Court nor counsel for appellee was able to see what was on the drive. The court found that, to the extent the contents of the drive deviated from information previously disclosed to appellee, it would not consider it

as evidence, consistent with the court's previous orders in limine. The trial court further found appellants failed to produce source documents to substantiate the legitimacy of any of the transactions itemized on appellee's "Notice of Specific Monies in Dispute," and appellants were therefore prohibited by the court's previous orders from offering testimony concerning their contents.

{¶10} Appellee testified he had been an electrician for twenty-eight years when he decided to go into the restaurant business. In 2004, as part of a lease agreement, he operated a restaurant called Hiney's. The business ran into financial troubles. Appellee was unable to make payroll, was losing money, and had sales tax debt. Mason loaned appellee money during this period of financial decline. Tony Adams suggested appellee bring in Mason as a business partner. Appellee and Mason formed the two appellant limited liability companies. Each LLC had a separate operating agreement. Pursuant to The Grill's operating agreement, for the first five years, appellee was to receive fifteen percent interest, and a ten percent interest after five years. Under Twenty First Street's operating agreement, appellee was to receive a ten percent interest.

{¶11} On April 27, 2007, appellee exercised the option in the original lease to purchase the property located at 1671 N. 21st Street in Newark, Ohio, for $650,000. Appellee believes the purchase was made possible through a bank loan on the property that was obtained by Mason. Hiney's, Inc. sold the property to Twenty First Street for $1.25 million. Appellee stated he did not receive any money at closing when the conveyance happened and did not receive any money after closing as a result of the conveyance to Twenty First Street. Appellee believed that, as part of contributing the real estate to the LLC, the previous obligations of Hiney's would be paid. The day appellee

signed the property over to Twenty First Street, a check for $175,355.27 was issued by Twenty First Street; appellee does not know what this was for. The following week, a check for $768,389.73 was issued by Twenty First Street; appellee does not know what this was for.

{¶12} Approximately one month after the conveyance of the business to Twenty First Street, Mason asked appellee to step away from the management of the business. From that point forward, appellee was not involved in operating the business.

{¶13} Starting in 2008, appellee questioned Mason about the finances of the companies. Appellee testified: Mason was not authorized to have a personal bar tab of $34,688.25; nothing in the operating agreements authorized Mason and his family to eat free in the amount of $26,876.92; he did not authorize payments to 3-Way Chili; he did not authorize transactions in the amount of $28,748.44; he did not authorize payments of $14,314.50 to the Chop House (Mason's restaurant); he did not authorize disbursements entitled "lottery account" in the amount of $8,930; he did not authorize company funds of $56,067.21 to be used to establish and pay start-up expenses for The Grill Deli (Mason's restaurant); he did not authorize payments of $5,102.94 to 2 Brothers (Mason's restaurant); he had no idea what a payment to Happy's Savings for $18,300 was for; to his knowledge, there was never a savings account in the company's name; management fees of $401,602.08 were not authorized and the operating agreements stated no member is paid for their work for the company; he never approved the terms of any note with Mason; he did not approve payment to Select Garden Products (Mason's mulch business) in the amount of $1,080,292.96; and he did not approve the purchase of a limousine for $37,000. Appellee believes the list "Notice of Specific Monies in Dispute"

listed the improper distributions by Mason that appellee was entitled to receive a share of.

{¶14} Appellee did not know Mason was refinancing the property in 2008 and he did not receive any money from the refinance. Appellee never authorized the sale to Chris Cover, or anyone else. Appellee believes the sale price of $565,000 for the property was low, as he believes the value of the property in 2015 was $800,000 or $900,000.

{¶15} Victor James ("James") is an accountant hired by appellee. He reviewed the QuickBooks files Mason provided to appellee. As part of this review, James flagged numerous items for the failure to adhere to general accounting principles or U.S. tax law. James listed out these questionable transactions in a document entitled "Notice of Specific Monies in Dispute." James stated neither Mason's bar tab nor his food tab was reasonable. In James' opinion, if there were notes payable from Mason's other companies to the appellant companies, the requirement is that there be actual, physical promissory notes. In the absence of this documentation, the IRS classifies these amounts as either payroll, subject to payroll taxes, or distributions. James testified that, absent additional substantiation with source documents, all of the transactions listed in the "Notice of Specific Monies in Dispute" were distributions to Mason and his related companies. James does not believe any of these transactions were loan payments because the financial documents contained no notes, cancelled checks, or other source document to substantiate Mason's claims.

{¶16} On cross-examination, James confirmed he was not a CPA and obtained his accounting degree in 2012.

{¶17} Stephen Antritt ("Antritt") testified he loaned money to Mason. In 2011, Mason told him he needed the money Antritt loaned to him for a line of credit for his mulch business. Mason did not inform Antritt he was loaning money to the restaurant. Antritt received loan payments from Twenty First Street, The Grill, from Mason personally, and from The Grill on 79. Antritt stated he was not being paid for lawn care or snow removal with these payments, because that money was billed and paid separately from the money he was receiving for the loans.

{¶18} Jeffrey Armstrong ("Armstrong") was the previous general manager of the appellant companies. Counsel for appellee asked Antritt what Armstrong told him. After objection, counsel for appellee stated he would offer Antritt "as a rebuttal witness in the event that Jeff Armstrong falsely testifies. In the interest of COVID and having him in here only once, I would like to hear what Steve Antritt has to say about this testimony. You can take it for what it's worth." Armstrong allegedly told Antritt he was going to throw Mason "under the bus" and tell the court "every Friday Gordon Food Service truck comes in, I cut a $10- or $20,000 check for crab legs, steak, all these supplies, and they never come into the restaurant" because it would go to Mason's friends, family, and catering business.

{¶19} Carolyn Overman ("Overman") is Mason's bookkeeper. She testified when Armstrong was general manager, he was on the Skyline Chili payroll so he could receive insurance benefits. Overman entered data daily from the business into QuickBooks. She provided this information to Crumrine.

{¶20} Mason testified Select Garden Products is a mulch company he owns. He also owns 3-Way Chili, a Skyline Chili franchise he operated from 2005 through 2010.

Mason testified that, prior to executing the operating agreements in 2007, he loaned $150,000 to appellee.  Mason stated from 2006 until the date of trial, appellee never provided any monies or contributed any monies in order to keep the businesses open and, in most years, the businesses operated at a loss.

{¶21}  Park National Bank held the mortgage on the 21st Street property.  Mason was in forbearance on the mortgage with Park National Bank.  After Park National sold the mortgage to an investment firm in Texas, Mason went to several friends and told them the property was being foreclosed.  Mason's friend Chris Cover ("Cover") contacted the investment firm and "worked whatever deal they worked."  Mason denied having any interest in the property at the time of trial and stated he never received any money from Cover after Cover acquired the real estate.  Cover also purchased Mason's personal home via short sale.  Mason still lives in the home and pays Cover monthly rent.

{¶22}  Mason attempted to testify about loans he and/or other companies he owned allegedly made to the appellant companies.  However, the trial court found this testimony violated the rulings on the motion in limine.  The trial court permitted Mason to proffer testimony.

{¶23}  Mason stated he spent approximately $400,000 renovating the property. He could not recall whether Select Garden Products paid the contractors directly for the renovations on the 21st Street property, or whether it went through the appellant companies.  Mason stated appellee agreed to the renovations.

{¶24}  When asked whether there were loans made to either Twenty First Street or The Grill from any of his other businesses after January 1, 2007, Mason responded, "I don't totally, you know, recall.  Whenever the – whenever the business needed money,

you know, I had – I took money from wherever I needed to to make sure we made payroll, to make sure we could pay our bills * * *."  Mason believes if he had not loaned The Grill and Twenty First Street money from his other businesses, the restaurant would have closed several years before it did.

{¶25}  Mason could not remember if 3-Way Chili loaned money to The Grill or Twenty First Street.  He stated Select Garden Products and his other businesses loaned money when needed to survive.  Mason went through each of the items listed on the "monies in dispute" sheet, and stated the money at issue was not income.  It was used to pay back loans the other companies made to the appellant businesses.  Mason testified his deposition testimony that Select Garden Products closed in 2000 was incorrect and it did not close until 2012.  That ended the proffer of Mason's testimony.

{¶26}  Cover testified he had conversations with representatives from the bank about acquiring the 21st Street property in 2015.  He paid $565,000 for the property, including the building.  Mason still owes approximately $250,000 to Cover.  Cover denied he is holding onto the property for Mason until this lawsuit is concluded.

{¶27}  Michael Crumrine ("Crumrine") is a CPA who prepared tax returns for Mason and his businesses.  Pursuant to the tax returns Crumrine prepared, The Grill had: a loss of $103,915 in 2007; a loss of $52,810 in 2008; a loss of $4 in 2009; income of $27,892 in 2010; income of $3,050 in 2011; a loss of $27,135 in 2012; and a loss of $22,121 in 2013.  The tax returns Crumrine prepared for Twenty First Street show:  a loss of $46,000 in 2007; a loss of $38,715 in 2008; a loss of $5,924 in 2009; a loss of $8,517 in 2010; income of $2,118 in 2011; income of $2,777 in 2012; a loss of $25,632 in 2013; a loss of $8,914 in 2014; and a loss of $95,420 in 2015.

{¶28} Crumrine prepared the tax returns each year by obtaining a copy of the QuickBooks file from Overman. Crumrine would make adjustments on the QuickBooks files, adjusting journal entries to switch the information from a cash basis, as kept by Overman, to an accrual basis. Crumrine would also "make other adjustments as necessary."

{¶29} As to the balance of Crumrine's testimony, the court found Crumrine was not asked to verify or authenticate which QuickBooks files were the ones he received, which files he used to prepare tax returns, or which specific files he altered after preparing appellants' tax returns. Thus, his testimony lacked foundation because he did not correlate any QuickBooks files in evidence to the tax returns he prepared.

{¶30} The trial court issued an extensive judgment entry on August 5, 2020.

{¶31} Though the court permitted appellant Mason to proffer testimony about loans he and/or other companies he owned allegedly made to the appellant companies, the court found Mason failed to articulate any specific dates or amounts of these alleged loans; failed to identify any specific deposits on the bank records in evidence which were loans to the company; failed to identify who the lenders of these funds were; and did not testify concerning the terms of any of these alleged loans. The court concluded Mason's testimony was not allowed pursuant to the judgment entry on the motion in limine because his claims should have been substantiated by source documents and disclosed to appellee as ordered by the court. The court continued, "in the absence of such evidence, the court finds that payments to Defendant, Mason, and his related companies and affiliates were not repayments but were distributions; and Plaintiff was entitled to a proportional share in such distributions in accordance with the operating agreements."

**{¶32}** The court found Mason misappropriated $1,869,571.60 in funds and property from The Grill, itemized as follows: Mason's personal bar tab of $34,688.25; Mason's personal food tab of $26,876.92; $21,947.82 transfer to Mason's related company 3-Way Chili; payments to Mason's restaurant Chop House in the amount of $84,314.50; $8,930 from the "lottery account"; payments of $56,067.21 to Mason's restaurant "Grill Deli"; $125 for Mason's due diligence in deciding whether to establish a new restaurant called "On the Lake"; $975 for "On the Terrace"; $5,102.94 to "2 Bros."; $500 to Mason's restaurant "79 Grill"; $18,300 for "Pappy's Savings"; $401,602.08 in "Management Fees"; $46,564.11 for payments on an alleged note payable to Mason; $1,080,292.96 payments to Mason's company "Select Garden Products" that Mason testified went under in 2000, prior to when the company allegedly made the loans; $17,536.57 for a catering van; and $37,000 to purchase a limousine. Pursuant to the operating agreement, the trial court found appellee's share of these distributions was $263,887.33 with respect to distributions made prior to 2012 and $11,032.28 for distributions made after 2012.

**{¶33}** The trial court cited the testimony of James that, in the absence of evidence to support these transactions, they are classified as distributions under IRS guidelines and because Mason failed to produce documents to substantiate these transactions, they were distributions for the benefit of Mason.

**{¶34}** The trial court also found that, in addition to the items listed on appellee's "specific monies in dispute" document as detailed above, appellee was entitled to a portion of amounts for obligations which either were not proven to exist, were for Mason's personal obligations, or were for obligations of Mason's other related companies. These

included payments to Lois Oneson, Brad Davino, Ron Ramsey, Steve Antritt, and Frey Pryor; distributions from Twenty First Street payable to Select Garden Products; benefits to Mason's friend Cover; and payments to Antritt's business. The trial court also found appellee received nothing from the transaction transferring the building, which was valued at $1,250,000 at the time of transfer. The Court found Mason used the funds of The Grill to establish The Grill on 79, and Grill Works and Catering, and Mason used the companies' van and limousine for his personal benefit.

{¶35} The trial court granted judgment for appellee against The Grill and Mason, jointly and severally, in the amount of $298,647.95, plus interest at 5% per year. The trial court granted judgment for appellee against Twenty First Street and Mason, jointly and severally, in the amount of $229,374.50, plus interest at 5% per year.

{¶36} Appellants appeal the August 5, 2020 judgment entry of the Licking County Court of Common Pleas and assign the following as error:

{¶37} "I. THE TRIAL COURT ERRED AND IMPROPERLY PERMITTED DAMAGING HEARSAY TESTIMONY OVER OBJECTION REGARDING DEFENDANT MASON.

{¶38} "II. THE TRIAL COURT ERRED AND IMPROPERLY RULED DEFENDANT WOULD BE PROHIBTED FROM TESTIFYING REGARDING LOANS HE MADE AND REPAYMENTS HE RECEIVED IN TRYING TO KEEP THE BUSINESS OPERATING.

{¶39} "III. THE TRIAL COURT ERRED AND IMPROPERLY FOUND PLAINTIFF ACQUIRED THE REAL ESTATE KNOWN AS 21ST STREET PROPERTIES IN 2003 WHEN IN FACT IT WAS PURCHASED ON APRIL 27, 2007 ON MASON'S CREDIT.

**{¶40}** "IV. THE TRIAL COURT ERRED AND IMPROPERLY FOUND THE REAL ESTATE KNOWN AS 21ST STREET PROPERTIES WAS VALUED AT $1,250,000 AT THE TIME OF ITS SALE TO CHRIS COVER AND ERRED WHEN IT FOUND THERE WAS EQUITY IN THE REAL ESTATE FOR WHICH DEFENDANT BENEFITED.

**{¶41}** "V. THE TRIAL COURT ERRED AND IMPROPERLY FOUND THAT RENT PAYMENTS CHRIS COVER RECEIVED AFTER HIS PURCAHSE WERE DISTRIBUTIONS TO AND FOR THE BENEFIT OF MASON."

I.

**{¶42}** In their first assignment of error, appellants argue the trial court committed error in permitting hearsay testimony from Antritt about what Armstrong allegedly told him. Specifically, appellants contend the trial court should not have allowed Antritt to testify on rebuttal about what Armstrong told him, prior to when Armstrong testified. On rebuttal, Antritt stated Armstrong told Antritt he was going to testify that each Friday, Armstrong cut a check for $10,000 to $20,000 for food and supplies from Gordon Food Services that did not go into the restaurant, but instead went to Mason's friends, family, and catering business.

**{¶43}** We find the trial court did not commit error in permitting Antritt to testify on rebuttal prior to appellants calling Armstrong on direct examination. On May 5, 2020, appellants subpoenaed Armstrong to testify at trial. Both appellee and the trial court noted the reason for the rebuttal testimony prior to Armstrong's anticipated testimony on appellants' behalf was to limit exposure of the parties, witnesses, and court during the COVID-19 pandemic. This was a reasonable procedural accommodation by the trial court

in order to attempt to limit COVID-19 exposure. It was appellants' decision whether to call Armstrong as a witness.

**{¶44}** Further, though appellants contend the trial court "considered this testimony" provided by Antritt as evidence, the trial court stated he overruled appellants' objection to Antritt's rebuttal testimony "subject to Armstrong testifying." Since Armstrong never testified, according to the trial court's specific statement, appellants' objection was sustained. There is no evidence the trial court actually considered the rebuttal portion of Antritt's testimony in its decision.

**{¶45}** Additionally, we find no prejudice resulted from the trial court permitting Antritt to testify on rebuttal prior to Armstrong's testimony. In reviewing the rebuttal statements of Antritt, we find no statement so prejudicial that it deprived appellants of a fair trial. The testimony in question occupies only a very small portion of a voluminous transcript. This was a bench trial, in which the trial judge acted as the trier of fact, and a reviewing court will "presume the trial court considered only properly admitted evidence." *Columbus v. Guthmann*, 175 Ohio St. 282, 194 N.E.2d 143 (1963). "When the trial court is the trier of fact, we presume that the judge disregards improper hearsay evidence unless there is affirmative evidence in the record to the contrary." *State v. Wuensch*, 8th Dist. Cuyahoga No. 105302, 2017-Ohio-9272, 102 N.E.3d 1089.

**{¶46}** There is nothing in the record or the detailed entry of the trial court indicating the trial court relied on the rebuttal statements of Antritt in its decision. The trial court did not include the rebuttal portion of Antritt's testimony in any portion of its judgment entry, nor did the trial court base its judgment on or award damages for the amounts of food and supplies from Gordon Food Services that allegedly did not go into the restaurant.

Thus, we must presume that, even if any testimony was erroneously admitted into evidence, the trial court did not consider it in rendering its verdict. Any danger of unfair prejudice, confusion of the issues, or of misleading the trier of fact was minimal. *State v. Wilson*, 5th Dist. Fairfield No. 09-CA-44, 2010-Ohio-1394.

{¶47} Appellants' first assignment of error is overruled.

II.

{¶48} In their second assignment of error, appellants contend the trial court committed error and improperly ruled Mason would be prohibited from testifying regarding loans he made and repayments he received in trying to keep the business operating.

{¶49} In both the July 2019 and January 2020 judgment entries, the trial court ruled appellants could not introduce any documents, or testimony based upon documents, not provided to appellee, because appellants had not provided the documents at issue to appellee throughout multiple years of discovery. A trial court has the discretion to determine what sanction should be imposed for a discovery violation, and a reviewing court may reverse only on a finding of abuse of discretion. *Nakoff v. Fairview General Hospital*, 75 Ohio St.3d 354, 662 N.E.2d 1 (1996).

{¶50} If we construe the trial court's decision as a discovery sanction, we find the trial court did not abuse its discretion. Appellants had ample opportunity, throughout discovery, and specifically from July 2019 through January of 2020, to provide appellee the source documents for Mason's testimony. Appellants did not do so. Though appellants contend they complied with discovery by providing the QuickBooks files to appellee, the trial court made it clear, at the very latest, in July of 2019, that this was not

sufficiently responsive to the discovery requests, as appellee was entitled to the source documents that the QuickBooks files were based upon.

{¶51} The exclusion of this portion of Mason's testimony was the result of a motion in limine filed by appellee. A motion in limine is "directed to the inherent discretion of the trial court judge." It is a preliminary interlocutory order and the party's objection must be raised again at trial in order to consider the admissibility of the evidence in its actual context. *Bunta v. Mast*, 5th Dist. Holmes No. 20CA006, 2020-Ohio-5500. Appellee raised its objection to this testimony and introduction of documents at trial. The granting or denying of a motion in limine is reviewed under an abuse of discretion standard. *Estate of Johnson v. Randall Smith, Inc., LLC*, 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Huth v. Kus*, 5th Dist. Tuscarawas No. 2017 AP 06 0015, 2018-Ohio-1931, quoting *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 569 N.E.2d 1056 (1991).

{¶52} As detailed above, we find the trial court did not abuse its discretion in sustaining appellee's objection to Mason's testimony regarding the loans. It was clear from the trial court's order in July of 2019 that appellants had not provided appellee with specific discovery items. Appellants did not provide appellee with the source documents at issue before trial.

{¶53} Additionally, the trial court permitted Mason to proffer testimony regarding loans he made and repayments he received. Under Ohio law, "[t]he purpose of a proffer is to preserve alleged error in the exclusion of evidence for the purposes of appellate review." *In the Matter of Power*, 6th Dist. Lucas No. L-90-084, 1991 WL 397 (Jan. 4, 1991). See also *State v. Conkle*, 2nd Dist. Montgomery No. 24161, 2012-Ohio-1772 ("The purpose of a proffer is to assist the reviewing court in determining whether the trial court's exclusion of evidence affected the defendant's substantial rights.").

{¶54} "An improper evidentiary ruling constitutes reversible error only when the error affects the substantial rights of the adverse party or the ruling is inconsistent with substantial justice." *Beard v. Meridia Huron Hospital*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323 (2005). To determine if a ruling affects the substantial rights of the adverse party or is inconsistent with substantial justice a "reviewing court must not only weigh the prejudicial effects of those errors, but also determine that, if those errors had not occurred, the jury * * * would probably have made the same decision." *Id.*

{¶55} In this case, the trial court made clear in its judgment entry that Mason's testimony, through the proffer, would not have affected its decision as the factfinder. The trial court stated Mason failed to articulate any specific dates or amounts of these alleged loans; failed to identify any specific deposits on the bank records that were loans to the company; failed to identify the lenders of the funds; and did not testify to the terms of the alleged notes.

{¶56} We find there is competent and credible evidence to support the trial court's determination. When asked whether he made loans to The Grill or Twenty First Street from any of his other businesses after 2007, Mason responded, "I don't totally, you know,

recall. Whenever the – whenever the business needed money, you know, I had – I took money from wherever I needed to to make sure we made payroll, to make sure we could pay our bills * * *." He did not testify to any specific dates or amounts of the alleged loans, did not identify which companies allegedly lent the funds, and did not state which deposits were allegedly loans. Accordingly, even if the testimony from Mason about the alleged loans was improperly excluded, this exclusion did not affect appellants' substantial rights.

{¶57} Appellants' second assignment of error is overruled.

III.

{¶58} In their third assignment of error, appellants argue the trial court's finding that appellee acquired the real estate known as Twenty First Street Properties in 2003 is against the manifest weight of the evidence because it was purchased on April 27, 2007, on Mason's credit.

{¶59} In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, the Ohio Supreme Court clarified the standard of review appellate courts should apply when assessing the manifest weight of the evidence in a civil case.

{¶60} The Supreme Court held the standard of review for manifest weight of the evidence for criminal cases stated in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997) is also applicable in civil cases. *Id.* A reviewing court is to examine the entire record, and determine "whether in resolving conflicts in evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Sheet Metal Workers Local Union No. 33 v. Sutton*, 5th Dist. Stark No. 2011 CA 0262, 2012-Ohio-3549. "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a

reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

{¶61} As an appellate court, we are not factfinders; we neither weigh the evidence nor judge the credibility of the witnesses. *Markel v. Wright*, 5th Dist. Coshocton No. 2013CA0004, 2013-Ohio-5274. Our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base their judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758, 1982 WL 2911 (Feb. 10, 1982).

{¶62} The underlying rationale for giving deference to the findings of the factfinder rests with the knowledge that the factfinder is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proferred testimony. *Id.* Accordingly, a factfinder may believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill*, 124 Ohio App.3d 468, 706 N.E.2d 438 (4th Dist. 1998).

{¶63} The first portion of the trial court's judgment entry appellants take issue with is in the "factual findings" portion of the judgment entry, where the trial court states, "plaintiff purchased a bar/restaurant in 2003. At the same time, plaintiff purchased a piece of real estate on 21st in Newark, Ohio, which had previously been used as a bar/restaurant. Plaintiff's bar/restaurant was opened as Hiney's." This Court cannot disturb a trial court's factual finding as being against the manifest weight of the evidence if the factual finding is supported by some competent and credible evidence. *C.E. Morris Co. v Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶64} We find there is competent and credible evidence to support the trial court's finding of fact. Appellee testified he leased the bar area in the front of a Chinese restaurant at the location eventually acquired by appellants "a year or two" before signing a lease for the entire building. The lease was signed on May 3, 2004, and amended on April 25, 2005. Additionally, even if the trial court's use of the word "purchased" instead of "leased," is an error, this error concerns a background fact that does not affect the disposition in this case, as the issue is what occurred after the formation of the appellant companies in 2007.

{¶65} Further, the question of whether the building was purchased "on Mason's credit" was not a contested issue at trial. Appellee testified he thought the purchase was accomplished through a bank loan obtained by Mason. Mason stated he obtained the funds through his line of credit from the bank.

{¶66} Appellants essentially contend the trial court should have made an additional finding of fact that it did not. We find the trial court did not commit error in omitting this specific factual finding. Both parties agree appellee exercised his option in the lease to purchase the property for $650,000, and the eventual purchase of the property was completed through a bank loan or line of credit from Mason's bank.

{¶67} The second portion of the trial court's judgment entry appellants argue is against the manifest weight of the evidence is the trial court's statement, "Plaintiff transferred, without any cost to Defendant, Mason, a substantial portion of his interest in the business and business real estate." Appellants contend the "cost" to Mason was using his credit to obtain a mortgage. There is competent and credible evidence, in the form of appellee's testimony, to support this particular finding of fact. Appellee stated he

did not receive any money at closing when the closing happened, or after the closing happened, as a result of the conveyance to Twenty First Street. Appellants again ask this Court to find the trial court committed error in failing to include as a factual finding that the "cost" to Mason was using his credit to obtain a mortgage. We find no such error in the trial court's omission. Whether Mason's credit or good name was used to obtain the mortgage from the bank does not answer the question of whether appellee is entitled to a share of distributions at issue.

{¶68} Appellants appear to also argue the $1,869,571.60 Mason transferred from The Grill to Select Garden Products and the $1,123,745 ($175,355.27 paid out in April of 2007, $768,389.73 in May of 2007 made payable to Select Garden Products, and $180,000 in September 2008 made payable to Select Garden Products) were loan repayments from the credit or the use of his name to obtain the bank loan, and the trial court's finding to the contrary was against the manifest weight of the evidence.

{¶69} We find there is competent and credible evidence to support the trial court's determination that these amounts were distributions to Mason or for his personal benefit. Appellee testified he did not know what these distributions or payments were for, and that he did not authorize them. James testified that, in the absence of source documentation, according to the IRS, these payments were distributions. James does not believe any of these funds were loan payments, because the financial documents contained no notes, cancelled checks, or other source document to substantiate Mason's claims. Mason testified the funds he obtained from mortgaging the property (approximately $920,000 initially and $180,000 from refinancing) went to pay the seller, pay him back for what he was owed for loans he made to appellee prior to April of 2007, and pay other business

debts.  However, Mason did not have the receipts for any of the debts he allegedly paid, or documentation as to what Twenty First Street owed to Select Garden Products.  He could not remember where the $175,355.27 payment went and had no documentation to support his contention the funds paid to his company Select Garden Products were in repayment for specific debts or loans he previously made.  Mason's testimony is also inconsistent with his previous deposition testimony that Select Garden Products "went under" in 2000.

{¶70}  The trial court, as the trier of fact, may believe all, part, or none of the testimony of any witness who appears before it.  *Rogers v. Hill,* 124 Ohio App.3d 468, 706 N.E.2d 438 (4th Dist. 1998).  The trial court was in the best position to assess the credibility of the witnesses.  *Id.*

{¶71}  Appellants' third assignment of error is overruled.

IV.

{¶72}  In their fourth assignment of error, appellants contend the trial court's valuation of the real estate at $1,250,000 at the time of the sale to Cover was against the manifest weight of the evidence.

{¶73}  We find there is competent and credible evidence to support the trial court's factual determination as to the value of the property.

{¶74}  Mason obtained an initial mortgage on the property for $920,000 from Park National Bank.  The deed for the property states the property was purchased for $1.25 million in 2007.  Mason refinanced the property for $1.25 million in 2008.  Appellee testified he believes the property was worth anywhere from $800,000 to $900,000, but he had no idea of the condition of the building in 2015.

**{¶75}** Additionally, Mason mortgaged the property to outside investors twice before the sale in 2015: once to Tim Tefs in May of 2012, to whom Mason owed money on obligations unrelated to Twenty First Street or The Grill; and once to PNC Bank, where he mortgaged the property, plus additional items from his other businesses, for a total of $3 million. Accordingly, both Tefs and PNC believed the property was worth more than the $920,000 amount of the mortgage to Park National Bank.

**{¶76}** The building was in substantially same, or better condition, in 2015 than in 2007. Mason stated the building was in good condition in 2015. Though it needed some repairs after a small fire, two tenants were in the property prior to Cover purchasing it. When the Ale House was the tenant, they did a remodel of the building.

**{¶77}** Cover paid $565,000 for the property. He did not know what the mortgage amount was on the property, but he thought the reason it looked like a good deal was that the bank was willing to sell it for less than what they were actually owed. Cover testified he thought the property would have been worth about $900,000 when he purchased it, and he knew Old Bag of Nails was going to put several hundred thousand dollars into it, at their expense, after the purchase. Cover confirmed his deposition transcript testimony that, at the time of his purchase, the property was on the tax records for a value of $1.25 million.

**{¶78}** The trier of fact, may believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill,* 124 Ohio App.3d 468, 706 N.E.2d 438 (4th Dist. 1998). The trial court was in the best position to assess the credibility of the witnesses. *Id.*

**{¶79}** Appellants' fourth assignment of error is overruled.

V.

{¶80}  In their fifth assignment of error, appellants argue the finding by the trial court that rent payments Cover received after his purchase of Twenty First Street were distributions to and for the benefit of Mason was against the manifest weight of the evidence.  Appellants cite the testimony of Cover that there was no arrangement between himself and Mason to acquire the real estate, and argue there is nothing in the record to support a finding that Mason benefited financially from either the sale of Twenty First Street to Cover or the rent monies Cover received from Old Bag of Nails.

{¶81}  In the trial court's judgment entry, the trial court awarded appellee a share ($116,500) of benefits the trial court found Mason conferred on Cover in the amount of $1,165,000.  This included the discounted sale price on the property ($685,000) and the lease benefits ($480,000).

{¶82}  We find there is competent and credible evidence to support the trial court's finding the discounted sale price of the property was a financial benefit to Mason to which appellee was entitled to a share pursuant to the operating agreement.

{¶83}  Appellants specifically cite the testimony of Cover that the bank contacted him to the buy the property in support of their argument.  However, Mason testified, "I went to several people about [the sale of the property], the people that I owed money to" like Brad Davino, Antritt, and Cover and told them, "I was going to be foreclosed on.  And the investment firm, you know, basically said you have to get the property sold or, or you know, the only way you're going to get out of this is to sell it or we don't want to be in – we're not going to be in the restaurant business."  Mason continued, "So I went to those guys that I owed money to and said, hey, there might be a chance you can, you know,

work a deal with these people. And Chris Cover, you know, is the one that took advantage and – got ahold of the investment firm and worked whatever deal they worked."

{¶84} Cover, a friend of Mason's for twenty-five years, loaned Mason money several times. At the time of trial, Mason owed Cover over $250,000. In addition to purchasing the Twenty First Street property from the bank, Cover also purchased the home Mason lives in for $435,000 four years ago via short because the bank was foreclosing on the property. Mason estimated his home was worth $1 million, but Cover testified when he attempted to sell it, he could not get an offer for above $650,000. Mason pays Cover $2,000 in monthly rent. Antritt and Cover both testified that, prior to Cover's purchase of the Twenty First Street property, Cover promised to repay Antritt for the $126,000 debt Mason owed Antritt because he wanted to "make things right" and it was the "right thing to do."

{¶85} We similarly find there was competent and credible evidence to support the trial court's finding the lease benefits were financial benefits to Mason to which appellee was entitled to a share pursuant to the operating agreement. The lease agreement provided Old Bag of Nails would pay $7,500 per month with an option to purchase for $750,000 that increased to $765,000 if executed after February 28, 2019.

{¶86} Mason was "working on a lease agreement with Old Bag of Nails" when he owned Twenty First Street. However, Mason stated he could not execute the lease because he could not bring the mortgage current. Cover signed the bank note for the property on March 31, 2015. He originally projected to get his first rent check from Old Bag of Nails in July of 2015, but it ended up being in August of 2015. When asked how he learned about a potential lease to Old Bag of Nails, he testified, "I think there was

already a deal Eric had tried to work out, and from the conversation with the Old Bag of Nails people I don't think they cared very much for Eric. So when I got involved, I was easy to deal work with and we signed the deal." Cover confirmed Mason had already been in contact with Old Bag of Nails to put a lease agreement together when Cover first considered purchasing the property from the bank. Additionally, both Cover and Mason testified that Mason sent Cover an e-mail on February 13, 2015 with a proposed lease agreement with Old Bag of Nails.

{¶87} Appellants essentially argue since there is no direct testimony from either Cover or Mason that Mason benefitted financially from either the discounted sale of the real estate or the rental payments and because both denied Mason benefited from either of these transactions, the trial court's conclusion is against the manifest weight of the evidence. However, as the trier of fact, the court was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

{¶88} Although the evidence may have been circumstantial, circumstantial evidence and direct evidence inherently possess the same probative value. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), superseded by State constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997). Circumstantial evidence is that which can be "inferred from reasonably and justifiably connected facts." *State v. Fairbanks*, 32 Ohio St.2d 34, 289 N.E.2d 352 (1972). Simply because Cover and Mason testified the rent and sale of the building did not benefit Mason does not mean the trial court's determination to the contrary is against the manifest weight of the evidence. We find sufficient circumstantial evidence, if believed, was

presented to establish Mason benefited from the rent income and from the discounted real estate Cover received.  Thus, appellee was entitled to 10% of this amount.

{¶89}  Appellants' fifth assignment of error is overruled.

{¶90}  Based on the foregoing, appellants' assignments of error are overruled.

{¶91}   The August 5, 2020 judgment entry of the Licking County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, Earle, J., concur