[Cite as *Heard v. Aultman Hosp.*, 2016-Ohio-1076.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| EDLEESHA HEARD, BIOLOGICAL MOTHER AND LEGAL CUSTODIAN OF NEHEMIAH HEARD | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellant | : | |
| | : | |
| -vs- | : | |
| | : | Case No. 2015CA00141 |
| | : | |
| AULTMAN HOSPITAL, ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Stark County Court of Common Pleas, Case No. 2013CV03174


JUDGMENT:    AFFIRMED


DATE OF JUDGMENT ENTRY:    March 14, 2016


APPEARANCES:

For Plaintiff-Appellant:

SHIRLEY SMITH
1399 E. Western Reserve Road
Suite 2
Poland, OH 44514

TRACY A. LASLO
325 E. Main St.
Alliance, OH 44601

For Defendants-Appellees:

RICHARD S. MILLIGAN
JENNA M. MCKEAN
4684 Douglas Circle
P.O. Box 35459
Canton, OH 44735

*Delaney, J.*

{¶1}   Plaintiff-Appellant Edleesha Heard, Biological Mother and Legal Custodian of Nehemiah Heard appeals the July 6, 2015 judgment entry of the Stark County Court of Common Pleas.

{¶2}   This case comes to us on the accelerated calendar. App.R. 11.1, which governs accelerated calendar cases. The rule provides in pertinent part the following:

(E) Determination and judgment on appeal

The appeal will be determined as provided by App. R. 11.1. It shall be

sufficient compliance with App. R. 12(A) for the statement of the reason for

the court's decision as to each error to be in brief and conclusionary form.

The decision may be by judgment entry in which case it will not be published

in any form.

{¶3}   One of the important purposes of the accelerated calendar is to enable an appellate court to render a brief and conclusory decision more quickly than in a case on the regular calendar where the briefs, facts, and legal issues are more complicated. *Crawford v. Eastland Shopping Mall Association*, 11 Ohio App.3d 158, 463 N.E.2d 655 (10th Dist.1983).

{¶4}   This appeal shall be considered in accordance with the aforementioned rules.

## FACTS AND PROCEDURAL HISTORY

{¶5} On April 18, 2005, Nehemiah Heard underwent a tonsillectomy, adenoidectomy, and bilateral tyniparostomy with tubes at Aultman Hospital. Nehemiah,

born on July 11, 2000, was four years old at the time of the surgery. Nehemiah had previously been diagnosed with asthma.

{¶6}  Dr. Yvette Cho was the anesthesiologist assigned to the surgery. Debra Howard and Patricia Sinar, Certified Registered Nurse Anesthetists, assisted with anesthesiology during the surgery. Prior to the surgery, Dr. Cho obtained a ten milligram per milliliter vial of morphine to be used for the surgery. The largest vial of morphine available at Aultman Hospital is a ten milligram vial. Based on Nehemiah's age, height, and weight, the appropriate dosage of morphine was 1.5 milligrams. Dr. Cho or Howard administered morphine to Nehemiah during the surgery and the dosage amount noted on the anesthesia record was 1.5 milligrams. The waste of the remaining morphine was not documented on the anesthesia record. Dr. Cho also brought fentanyl to possibly be used during the surgery. The fentanyl was not used and the waste of the fentanyl was documented on the anesthesia record.

{¶7}  Nehemiah was intubated for the surgery. His pulse oximetry monitoring his oxygen level was noted in the anesthesia record as 100 or 99 throughout the surgery.

{¶8}  Nehemiah's breathing tube was removed at 2:00 p.m. At 2:05 p.m., the anesthesia record notes that Nehemiah had wet, sonorous respirations. He was placed on an oxygen mask. At 2:25 p.m., Dr. Cho ordered the administration of 20 micrograms of Narcan. Narcan is a drug that reverses the effects of morphine. Narcan was administered to make Nehemiah less sleepy.

{¶9}  At 2:29 p.m., Nehemiah was transported from the operating table to the patient bed in the Post Anesthesia Care Unit ("PACU"). The record states at that time Nehemiah was awake and crying.

{¶10} During Nehemiah's recovery in the PACU, he continued to sleep for long intervals and exhibit lethargy. He continued receiving oxygen through a mask. He was given two albuterol aerosol breathing treatments and had chest x-rays taken. Nehemiah was administered antibiotics. An order for post-operative administration of morphine signed by Dr. Cindy Congeni was crossed out in the PACU record. After a pediatric consult for Nehemiah's continued postoperative lethargy, it was determined that Nehemiah should be transferred to Akron Children's Hospital. At 11:20 p.m., Nehemiah was transferred to Akron Children's Hospital.

{¶11} Edleesha Heard, mother of Nehemiah, stated Nehemiah was in Akron Children's Hospital for almost a week. Ms. Heard was told by a physician with Akron Children's Hospital that Nehemiah had too much anesthesia. Ms. Heard stated that before the surgery, Nehemiah had been potty trained since the age of two and a half. After the surgery, Nehemiah had to wear diapers again. She noticed he could not feed himself. His speech was slurred. Ms. Heard took Nehemiah to his pediatrician but Ms. Heard stated the pediatrician did not do anything for the child. The record is silent as to whether Ms. Heard sought further medical treatment for Nehemiah based on her observations after the surgery.

{¶12} Nehemiah started school at age five. In 2012, Nehemiah was in seventh grade. Ms. Heard stated that at that time, Nehemiah needed assistance with dressing and using the restroom. He received physical therapy at school for his legs. Ms. Heard stated that Nehemiah could not read and did not know how to spell. Nehemiah's school records were not entered into the record.

{¶13}  Ms. Heard filed her original complaint for medical malpractice in 2011. The complaint was voluntarily dismissed and refiled on December 11, 2013. In her complaint, Ms. Heard alleged Nehemiah was injured as a result of negligence during the course of his surgery on April 18, 2005. Ms. Heard alleged that Nehemiah was administered an overdose of morphine resulting in Nehemiah suffering a hypoxic injury or respiratory distress during the surgery. As a result of the negligence, Ms. Heard claimed Nehemiah suffered debilitating brain damage. Ms. Heard further alleged the defendants were negligent in providing care for Nehemiah after the surgery. Finally, she claimed the defendants wrongfully altered his medical records.

{¶14} Ms. Heard named as defendants Dr. Yvette Cho, Debra Howard, Dr. Cindy Congeni, Ohio Hospital Based Physicians Corporation, and Aultman Hospital (hereinafter "Aultman").

{¶15} Aultman filed its motion for summary judgment on May 15, 2015. Aultman argued there was no genuine issue of material fact that Aultman administered the correct dosage of morphine to Nehemiah. In support of its motion for summary judgment, Aultman submitted the depositions of Dr. Steven Schechter (Ms. Heard's neurology expert), Katherine Koppenhaver (Ms. Heard's handwriting expert), Dr. Cho, Debra Howard, and Dr. Congeni.

{¶16} Ms. Heard responded to the motion for summary judgment on June 19, 2015. In support of her motion for summary judgment, she included the depositions of the parties. She also attached as exhibits E, F, and I which were the expert reports from Dr. Schechter and Dr. Anthony F. Pizon (medical toxicologist). No deposition was taken of Dr. Pizon.

{¶17} Aultman responded to the motion for summary judgment. It also filed a separate motion to strike Ms. Heard's exhibits E, F, and I as unauthenticated pursuant to Civ.R. 56.

{¶18} On July 6, 2015, the trial court issued its judgment entry granting summary judgment in favor of Aultman. The trial court dismissed the motion to strike as moot.

{¶19} It is from this decision Ms. Heard now appeals.

## ASSIGNMENTS OF ERROR

{¶20} Ms. Heard raises three Assignment of Error:

{¶21} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANTS-APPELLEES AS ISSUES OF FACT ABOUND SUCH THAT THE HEREIN CASE WAS IMPROPERLY DENIED DETERMINATION BY JURY.

{¶22} "II. THE TRIAL COURT ERRED IN THAT THE TRIAL JUDGE IMPROPERLY ASSUMED THE ROLE OF THE JURY IN MAKING DETERMINATIONS OF FACTUAL DISAGREEMENTS.

{¶23} "III. THE TRIAL COURT ERRED IN THAT THE TRIAL JUDGE IMPROPERLY ASSUMED AND DETERMINED MEDICAL OUTCOMES BEYOND HIS QUALIFICATIONS AND CONTRARY TO EXPERT REPORTS."

## ANALYSIS

### Summary Judgment Standard of Review

{¶24} Ms. Heard's three Assignments of Error concern the trial court's judgment entry granting Aultman's motion for summary judgment. This court reviews summary judgment rulings applying the same standards as the trial court: de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We afford the lower court's

decision no deference and independently review the record to determine whether summary judgment is appropriate. *Melling v. Scott*, 8th Dist. Cuyahoga No. 103007, 2016-Ohio-112, ¶ 20. We refer to Civ.R. 56(C) in reviewing a motion for summary judgment which provides, in pertinent part:

> Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶25} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

{¶26} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

### *Expert Reports*

{¶27} The first issue to be resolved is the scope of the Civ.R. 56 evidence upon which the Court can render its decision whether there are genuine issues of material fact for trial. In support of its motion for summary judgment, Aultman attached the deposition of Dr. Steven Schechter. In response to the motion for summary judgment, Ms. Heard attached the expert reports of Dr. Steven Schechter and Dr. Anthony Pizon. The expert reports were not authenticated by affidavit. Aultman filed a motion to strike the expert reports of Drs. Schechter and Pizon for Ms. Heard's failure to comply with Civ.R. 56(C).

{¶28} The Tenth District Court of Appeals addressed this issue in *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. Franklin No. 14AP-870, 2015-Ohio-2661, ¶ 23. It held that pursuant to Civ.R. 56(C),

> " 'documents submitted in opposition to a motion for summary judgment must be sworn, certified or authenticated by affidavit to be considered by the trial court in determining whether a genuine issue of material fact exists for trial.' " *Rilley v. Brimfield,* 11th Dist. No.2009–P–0036, 2010–Ohio–5181, ¶ 66, quoting *Sintic v. Cvelbar,* 11th Dist. No. 95–L–133 (July 5, 1996). The proper procedure for introducing evidentiary matter of a type not listed in Civ.R. 56(C) is to incorporate the material by reference into a properly framed affidavit. *Martin v. Cent. Ohio Transit Auth.,* 70 Ohio App.3d 83, 89,

590 N.E.2d 411 (10th Dist.1990), citing *Biskupich v. Westbay Manor Nursing Home,* 33 Ohio App.3d 220, 515 N.E.2d 632 (8th Dist.1986). The rule of law applies with equal weight to expert medical reports. *See, e.g., Smith v. Gold–Kaplan,* 8th Dist. No. 100015, 2014–Ohio–1424, ¶ 23 (because nonmoving party failed to incorporate a letter from her medical expert through a properly framed affidavit, the trial court properly disregarded the purported expert report in ruling on a motion for summary judgment); *Toth v. United States Steel Corp.,* 9th Dist. No. 10CA009895, 2012–Ohio–1390, ¶ 11 (in ruling on a motion for summary judgment, trial court could not consider expert report under Civ.R. 56(C) because it is not incorporated into an affidavit); *Wallner v. Thorne,* 189 Ohio App.3d 161, 937 N.E.2d 1047, 2010–Ohio–2146, ¶ 18 (9th Dist.) (an unsigned expert's report, which was not incorporated into an affidavit or other sworn document, did not constitute proper Civ.R. 56(C) evidence); *Garland v. Simon–Seymour,* 11th Dist. No.2009–G–2897, 2009–Ohio–5762, ¶ 51 (an unsworn expert report is irrelevant for purposes of summary judgment); *Cunningham v. Children's Hosp.,* 10th Dist. No. 05AP–69, 2005–Ohio– 4284, ¶ 15 (medical expert's letter that is not incorporated into a properly framed affidavit does not fall within the types of evidence listed in Civ.R. 56(C) and lacks any evidentiary value for purposes of a motion for summary judgment).

{¶29} Accordingly, we will not consider the expert report of Dr. Pizon as allowable evidence under Civ.R. 56(C). The deposition of Dr. Schechter submitted by Aultman,

which included his expert reports, may be considered in determining whether there is a genuine issue of material fact for trial.

### *Medical Negligence*

{¶30} It is well settled that, "in order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things." *Bruni v. Tatsumi,* 46 Ohio St.2d 127, 346 N.E.2d 673, 675 (1976), paragraph one of syllabus. Summarized, a prima facie case of medical malpractice consists of a showing that: (1) the physician deviated from the ordinary standard of care exercised by other physicians, *i.e.* the physician was negligent, and (2) such deviation was the proximate cause of the patient's injury. *Egleston v. Fell,* 6th Dist. Lucas No. L–95–127, 1996 WL 50161, *2 (Feb. 9, 1996) citing *Bruni,* 46 Ohio St.2d 127, 346 N.E.2d 673, paragraph one of syllabus.

{¶31} In order to prevail in a medical malpractice claim, a plaintiff must demonstrate through expert testimony that, among other things, the treatment provided did not meet the prevailing standard of care and the failure to meet the standard of care caused the patient's injury. *Ramage v. Central Ohio Emergency Services, Inc.,* 64 Ohio St.3d 97, 102, 1992–Ohio–109, 592 N.E.2d 828; *Hoffman v. Davidson,* 31 Ohio St.3d 60, 62, 508 N.E.2d 958 (1987). Proof of the recognized standards must necessarily be

provided through expert testimony. This expert must be qualified to express an opinion concerning the specific standard of care that prevails in the medical community in which the alleged malpractice took place, according to the body of law that has developed in this area of evidence. *Bruni* at 131–132, 346 N.E.2d 673.

{¶32} Ms. Heard asserts there are genuine issues of material fact for trial as to whether Nehemiah was administered an overdose of morphine during or after the surgery, causing him to suffer a hypoxic injury leading to brain damage. The Court has reviewed all the Civ.R. 56(C) evidence in a light most favorable to Ms. Heard. Upon our review, we determine that reasonable minds could only conclude there was no breach of the standard of care by Aultman on April 18, 2005.

{¶33} Nehemiah's surgery took place in 2005. Every party and witness deposed in this case testified he or she had no recollection of Nehemiah or the medical care given to Nehemiah on April 18, 2005. The parties and witnesses relied solely on Nehemiah's medical records generated on April 18, 2005 in order to testify as to the events that occurred on April 18, 2005.

{¶34} The medical records show that Dr. Cho or Debra Howard administered 1.5 milligrams of morphine to Nehemiah during the surgery. Dr. Schechter, Ms. Heard's expert in neurology, testified 1.5 milligrams was the correct dosage of morphine for a child of Nehemiah's age and size. Ms. Heard argues Nehemiah was negligently administered a dosage of 15 milligrams. A ten milligram vial is the maximum size of morphine available at Aultman Hospital.

{¶35} Ms. Heard argues that based on the alleged overdose of morphine, Nehemiah suffered a hypoxic injury during the surgery. Nehemiah was intubated during

the surgery and was monitored by Dr. Cho or Debra Howard. The medical records show Nehemiah's pulse oximetry, which measured his oxygen saturation, was at 100 or 99 during the surgery.

{¶36} Ms. Heard points to Aultman's use of Narcan to demonstrate Aultman's overdose of morphine to Nehemiah. At 2:00 p.m., Nehemiah was awake enough after the surgery to be extubated. Dr. Cho testified she ordered the administration of 20 micrograms of Narcan at 2:25 p.m. to try to make Nehemiah less sleepy. Narcan can be used to reverse the side effects of morphine. Dr. James Toohey, pharmacist with Aultman Hospital, testified that even if 15 milligrams of morphine were administered, 20 micrograms of Narcan would reverse the effects.

{¶37} Ms. Heard argues Nehemiah may have been administered morphine post-operatively. The medical records show that Dr. Congeni, the anesthesiologist on call during Nehemiah's post-operative care, testified morphine was ordered to be discontinued for Nehemiah because he was given Narcan. The Aultman PACU nurses who cared for Nehemiah on April 18, 2005 testified that based on their reading of the medical records, no morphine was administered to Nehemiah post-operatively.

{¶38} The medical records in this case create no genuine issue of material fact that Aultman failed to monitor or respond to Nehemiah during his post-operative recovery from surgery. While in the PACU, Nehemiah was placed on oxygen, received two breathing treatments, had chest x-rays taken, and was given antibiotics. The records show that Aultman tried to remove him from oxygen, but his oxygen saturation levels went down on room air. When it was determined that Nehemiah was not recovering as expected, Aultman transferred Nehemiah to Akron Children's Hospital for further

treatment. There are no records in this case as to the treatment Nehemiah received at Akron Children's Hospital.

{¶39} In this case, reasonable minds could only conclude the Civ.R. 56(C) evidence creates no genuine issue of material fact that Aultman deviated from the ordinary standard of care exercised by other physicians, *i.e.* the physician was negligent, and such deviation was the proximate cause of Nehemiah's injury. Aultman is entitled to judgment as a matter of law on Ms. Heard's claims for medical negligence.

### *Negligence Per Se*

{¶40} Ms. Heard alleged in her complaint that Aultman was negligent per se for altering or falsifying Nehemiah's medical records. She alleges there is a genuine issue of material fact whether the medical records show Nehemiah was administered 1.5 milligrams of morphine or 15 milligrams of morphine.

{¶41} Upon our review, the medical records and testimony demonstrate no genuine issue of material fact that Aultman administered Nehemiah 1.5 milligrams of morphine on April 18, 2005.

### *Vicarious Liability – Negligent Credentialing*

{¶42} Ms. Heard alleged in her complaint that Ohio Hospital Based Physicians Corporation was vicariously liable for the medical negligence of Dr. Cho, Dr. Congeni, and Debra Howard. Ms. Heard further alleges Aultman Hospital was liable for negligently credentialing based on the medical negligence of Dr. Cho, Dr. Congeni, and Debra Howard.

{¶43} Based on our finding that Aultman is entitled to judgment as a matter of law as to Ms. Heard's claim for medical negligence, we find Aultman is entitled to judgment as to Ms. Heard's claims for vicarious liability and negligent credentialing.

### *Loss of Consortium – Punitive Damages*

{¶44} Loss of consortium is a derivative claim. Because Aultman is entitled to judgment as a matter of law as to Ms. Heard's claims, the claim for loss of consortium must fail.

{¶45} For those same reasons, Ms. Heard's claim for punitive damages cannot survive based on our decision there is no genuine issue of material fact that Aultman did not engage in medical negligence on April 18, 2005.

### CONCLUSION

{¶46} Accordingly, Ms. Heard's three Assignments of Error are overruled.

{¶47} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.