[Cite as *Mackey v. Altercare of Harvtille Ctr. for Rehab. & Nursing Care*, 2023-Ohio-1581.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | JUDGES: |
|---|---|---|
| TRACEY MACKEY, AS PERSONAL | : | Hon. W. Scott Gwin, P.J. |
| REPRESENTATIVE OF THE | : | Hon. John W. Wise, J. |
| ESTATE OF AUGUSTIA MACKEY | : | Hon. Patricia A. Delaney, J. |
| | : | |
| Plaintiff-Appellant | : | |
| | : | Case No. 2022CA00089 |
| -vs- | : | |
| | : | |
| ALTERCARE OF HARTVILLE | : | OPINION |
| CENTER FOR REHABILITATION | | |
| AND NURSING CARE, ET AL | | |
| | | |
| Defendants-Appellees | | |


CHARACTER OF PROCEEDING:      Civil appeal from the Stark County Court of Common Pleas, Case No. 2020CV01254


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      May 11, 2023


APPEARANCES:

For Plaintiff-Appellant      For Defendants-Appellees

BLAKE A. DICKSON      STEVEN J. HUPP
3401 Enterprise Parkway, Ste. 420      1300 East 9th Street, Suite 1950
Beachwood, OH 44122      Cleveland, Ohio 44114

*Gwin, P.J.*

{¶1} Appellant appeals the June 21, 2022 judgment entry of the Stark County Court of Common Pleas.

*Facts & Procedural History*

{¶2} Appellant Tracey Mackey, as the personal representative of the Estate of Augustia Mackey, filed a medical negligence action on June 21, 2019, alleging that appellees Altercare of Hartville Center for Rehabilitation and Nursing Care, Inc., ("Altercare"), TSG Nursing Centers, Inc., ("TSG") and Altercare of Ohio, Inc., were negligent in their care and treatment of the decedent Augustia Mackey ("Decedent"). Appellant alleged that, as a direct and proximate cause of appellees' negligence, Decedent suffered injuries which led to his death.

{¶3} Prior to trial, the trial court granted summary judgment to Altercare of Ohio and TSG. Additionally, the trial court granted summary judgment on the issue of punitive damages. The trial court denied appellant's motion for reconsideration of the summary judgment motions and denied reconsideration as to its rulings on several motions in limine.

{¶4} A jury trial was held from May 23, 2022 to June 2, 2022. The following facts are adduced from the record of the jury trial.

{¶5} In 2012, Decedent felt dizzy, and was life-flighted to the Cleveland Clinic ("Clinic") for bleeding in the brain. He was diagnosed with arteriovenous malformation ("AVM"). He was at the Clinic for two weeks, but recovered well after gamma knife therapy, and eventually returned to his normal activities.

{¶6} On May 18, 2018, Decedent felt dizzy, and was again life-flighted to the Clinic due to a hemorrhage from the AVM. The doctors sent Decedent to a rehabilitation facility (Edwin Shaw) while waiting to have surgery. At Edwin Shaw, Decedent fell. After the fall, Decedent returned to the Clinic, and was diagnosed with hydrocephalus, commonly known as water on the brain. Doctors first did a surgery called a suboccipital craniotomy on Decedent to repair the brain bleed from the AVM. Decedent did not wake up right away, and it was "touch and go." After the first surgery, Decedent had an ileus, developed several blood clots that required the use of an inferior vena cava filter, developed swelling in his legs, developed swelling in his brain, and had a subdural hematoma that made it difficult to control the pressure in his brain. Several weeks later, Decedent had a second surgery for the hydrocephalus, during which they placed a shunt in his brain. Decedent subsequently had a shunt revision surgery. After Decedent was discharged from the Clinic, he went to Altercare of Hartville.

{¶7} Decedent was initially admitted to Altercare on August 4, 2018. When Decedent left the Clinic and arrived at Altercare, he had the following diagnoses: AVM, hydrocephalus, hemorrhage and bleeding into the inner spaces of his brain, high blood pressure, sleep apnea, a blood clot that required the placement of an inferior vena cava filter, obesity, and trouble swallowing. In addition, he had a Stage 2 pressure injury, commonly known as a bedsore, on his coccyx. Upon release from the Clinic, the pressure injury was being treated with topical cream and a special dressing. Decedent was deemed at high risk for skin breakdown. While at Altercare, there were various treatments done for the pressure injury, such as foam dressing, pressure-reducing devices for the chair and bed, antibiotics, ointment, and debridement. There was conflicting testimony

as to whether Decedent was repositioned frequently enough, what the appropriate amount of time was between repositioning for the grade of the pressure injury, and whether the wound was checked frequently enough.

{¶8} When Decedent arrived at Altercare, he could not communicate with staff, and had significant cognitive impairment. He had continuous tube feeding, and needed complete assistance with his activities of daily living. Decedent needed two people to move him and needed a Hoyer lift to move him from the bed to the wheelchair.

{¶9} Tracey Mackey visited Decedent daily. Most days when she visited, he was sitting in a chair. Tracey did see people come to reposition Decedent, but only approximately once per week. Tracey stated Decedent appeared to be well-taken care of, and was bathed and dressed every day. She was never told the pressure injury was getting worse.

{¶10} On August 27, 2018, Decedent left Altercare for a follow-up neurological appointment at the Clinic. During the appointment, Decedent had a seizure and was admitted to the Clinic, where it was noted that the pressure injury was much worse. The doctors at the Clinic diagnosed Decedent with a Stage 4 pressure injury. While at the Clinic, Decedent had another debridement procedure on the pressure injury and had a vacuum-assisted closure dressing placed on the wound. Decedent went to Aultman Hospital on September 12, 2018. The wound did not heal completely while Decedent was at Aultman. Decedent then went to The Pines nursing facility. After staying at The Pines for four months, Decedent passed away on April 17, 2019, at the age of sixty-three.

{¶11} Appellant's experts testified Altercare breached the standard of care, and that the lack of appropriate treatment for the pressure injury at Altercare was a proximate

cause in Decedent's injury or death. Appellees' experts testified Altercare did not breach the standard of care, and the treatment Altercare rendered as to the pressure injury was not a proximate cause of Decedent's injury or death.

{¶12} The jury found in favor of appellant on the medical negligence claim and in favor of appellant on the claim that Altercare violated the Nursing Home Resident's Bill of Rights relative to Decedent. The jury awarded appellant $130,000 in compensatory damages, comprised of $30,000 for economic loss and $100,000 for non-economic loss. The jury did not award any damages on appellant's wrongful death claim. The trial court entered a final judgment entry on June 21, 2022.

{¶13} Appellant appeals the June 21, 2022 judgment entry of the Stark County Court of Common Pleas and assigns the following as error:

{¶14} "I. THE TRIAL COURT ERRED IN ITS DECISION MADE JUNE 1, 2022 TO ADMIT INTO EVIDENCE AND PERMIT ARGUMENT REGARDING DEFENDANTS' 'EXHIBIT A' AND TO ADMIT DEFENDANTS' 'EXHIBIT B'.

{¶15} "II. THE TRIAL COURT ERRED WHEN IT STRUCK FROM EVIDENCE THE MEDICARE ENROLLMENT FORM 855(A) AND THE PRINTOUT FROM THE MEDICARE ARCHIVES.

{¶16} "III. THE TRIAL COURT ERRED WHEN IT GRANTED THE MOTIONS FOR SUMMARY JUDGMENT FILED BY DEFENDANT-APPELLEES ALTERCARE OF OHIO, INC. AND TSG NURSING CENTERS, INC.

{¶17} "IV. THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT ON THE ISSUE OF PUNITIVE DAMAGES.

{¶18} "V. THE TRIAL COURT ERRED WHEN IT HELD THAT PLAINTIFF COULD NOT DISCUSS APPLICABLE SECTIONS OF THE OAC NOR THE CFR AT TRIAL.

{¶19} "VI. THE TRIAL COURT ERRED WHEN IT DENIED PLAINTIFF'S MOTION FOR RECONSIDERATION."

*Standards of Review*

{¶20} In appellant's first, second, and fifth assignments of error, appellant contends the trial court committed error in admitting or excluding certain evidence.

{¶21} Decisions regarding the admissibility of evidence are within the broad discretion of the trial court. *Beard v. Meridia Huron Hospital*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323 (2005). A decision to admit or exclude evidence will be upheld absent an abuse of discretion. *Id.* Abuse of discretion is more than an error of law or judgment; rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶22} Further, "an improper evidentiary ruling constitutes reversible error only when the error affects the substantial rights of the adverse party or the ruling is inconsistent with substantial justice." *Beard v. Meridia Huron Hospital*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323; Civil Rule 61. To determine if a ruling affects the substantial rights of the adverse party or is inconsistent with substantial justice, "a reviewing court must not only weigh the prejudicial effects of those errors but also determine that, if those errors had not occurred, the jury * * * would probably have made the same decision." *Id.*

{¶23} In appellant's third and fourth assignments of error, appellant argues the trial court committed error in granting summary judgment.

**{¶24}** Civil Rule 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

**{¶25}** A trial court should not enter summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. Of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law.

*Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

**{¶26}** When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243

I.

**{¶27}** In her first assignment of error, appellant contends the trial court committed error in admitting appellees' Exhibits A and B.

**{¶28}** We first note that while Exhibit B was marked for identification, the trial court did not admit Exhibit B into evidence. The trial court stated, "[a]nd then what I'd like to do is mark this packet as Defense Exhibit B. This will stay with the record. It will not go back to the jurors." (Tr. V. 6 at p. 98). Further, the court reporter noted in the transcript that while Exhibit A was marked, received, and admitted, Exhibit B was marked, but not received or admitted. (Tr. V. 6 at p. 3). Rather, the transcript states Exhibit B is "F/A," which was defined as "for appeal". (Tr. V. 6 at p. 3). Because the trial court did not admit appellees' Exhibit B and Exhibit B did not go back to the jury, we find appellant's arguments with respect to Exhibit B to be not well-taken.

**{¶29}** Exhibit A was admitted into evidence and submitted to the jury. Exhibit A is a document containing a list of records and/or bills that were introduced into evidence by appellant, numbered from 17 through 61. These bills and/or records start on the date of Decedent's admission to Altercare, and end in April of 2019. Next to each of these numbers are two columns. One column is entitled "Plaintiff Amounts." These numbers

were provided by appellant, and there is no dispute that these are the same numbers as appellant provided in her exhibit(s). A second column is entitled "Defense Amount" which contains a number, lower than appellant's amount, for each record or bill from number 17 through 61.

{¶30} Appellant first contends the admission of Exhibit A violated the trial court's order dated September 15, 2020 requiring the parties to submit their exhibits to the court and the opposing party prior to trial. However, in their trial brief dated September 13, 2021, under the section entitled "an index of all proposed exhibits containing a brief description of each exhibit," appellees stated, "defendant will move to admit any of Mr. Mackey's medical records not introduced by plaintiffs." The list of numbers in the "Defense Amount" column in Exhibit A came directly from Decedent's medical records. Accordingly, we find the trial court did not abuse its discretion in finding appellees complied with its September 15, 2020 order.

{¶31} Similarly, appellant argues the admission of Exhibit A "unfairly surprised" appellant at trial. However, it is clear from the exchange between counsel for the parties and the trial court during the September 6, 2021 hearing and during trial, that the numbers contained in Exhibit A came directly from the records provided by appellant to appellees in discovery. Further, appellant's argument throughout the case was that the numbers were not admissible because they were evidence of subrogated collateral sources. This argument concerning the collateral source rule was thoroughly briefed during motion practice, was the subject of motions in liminie, was argued at a hearing on September 6, 2021, and was again argued and discussed during trial. We find the trial court did not abuse its discretion in finding no unfair surprise.

{¶32} Appellant argues the admission of Exhibit A violated the trial court's order granting her motion in limine relative to the exclusion of all references to collateral sources. However, in Exhibit A, the trial court did not allow any reference to collateral sources in violation of its previous order. The trial court's order stated that reference to any collateral sources must be redacted from the medical bills, but "the amount accepted as final payment, write-offs, or adjustments to the bills may not be redacted." This ruling follows the Ohio Supreme Court's holding that, "either the bill itself or the amount actually paid can be submitted to prove the value of medical services." *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.3d 1195. The numbers contained in the "Defense Amount" column of Exhibit A are the amounts accepted in full payment for the medical services provided to Decedent. Exhibit A did not provide any information stating or implying who paid for Decedent's medical bills. It only lists the location and dates of the services rendered, and provides the amount charged and the amount paid. The Ohio Supreme Court stated that the collateral source rule "does not apply to write-offs of expenses that are never paid" and a written-off portion of a medical bill "differs from receipt of compensation." *Id.* Accordingly, we find the trial court did not violate its previous order, and the admission of the numbers contained in Exhibit A was in accordance with the Ohio Supreme Court's rulings in *Robinson* and *Jacques v. Manton*, 125 Ohio St.3d 342, 2010-Ohio-1838, 928 N.E.2d 434.

{¶33} Appellant next contends the trial court abused its discretion in admitting Exhibit A because the document was not properly authenticated. The numbers from Exhibit A came directly from Decedent's medical records, which were provided by appellant to appellees prior to trial. The medical records were subject to extensive motion

practice, wherein appellant contended she did not have to produce certain medical bills to appellees due to the collateral source rule. Appellant argued both during the September 16, 2021 hearing and at trial that such disclosure would violate the collateral course rule. However, as detailed above, Exhibit A complied with the Ohio Supreme Court's rulings on the collateral source rule.

{¶34} Dr. Mirski, appellees' expert, specifically testified he reviewed Decedent's medical records from the Clinic, Altercare, Aultman, the Pines, and the remaining medical records until the date of Decedent's death, in forming his opinion. Appellant stated during motion practice with regard to the parties' motions in limine that there "is no challenge to the authenticity of Decedent Augustia Mackey's medical records and medical bills." Further, appellant stated that both appellant and appellees' experts in the case "relied, without exception, on [Decedent's] medical records" in forming their opinions, so it is "entirely appropriate for these records to be admitted into evidence." Appellant utilized these same records to come up with the numbers she claimed were the appropriate amount of each bill numbered 17 through 61. Accordingly, we find the trial court did not commit error in allowing appellees to utilize these records to formulate the number contained on the "Defense Amount" column of Exhibit A.

{¶35} Further, pursuant to Evidence Rule 1006, a party may present a summary of "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court." Exhibit A is a summary of the billed amounts provided by appellant. Though appellant contends the records were not voluminous, the record demonstrates the PrimeTime records were over 300 pages. Counsel for appellees confirmed the documents used to create the "Defense Amount" portion of Exhibit A were

medical records obtained via discovery from appellant. See *State v. Clark*, 10th Dist. Franklin No. 19AP-300, 2021-Ohio-559.

**{¶36}** Appellant also argues appellees did not properly "explain" the numbers contained in the exhibit. However, appellees argued in their closing argument that the amounts set forth by appellant were not reasonable. Any failure on the part of appellees to adequately explain each of the numbers contained in the exhibit goes to the weight to be given to the exhibit, rather than its admissibility. *Id.*

**{¶37}** Even if the trial court did commit error in admitting Exhibit A, such error is harmless because appellant has not demonstrated the admission of the exhibit affected her substantial rights. Even if the error had not occurred, the jury would probably have made the same decision. While Exhibit A did not contain a total of what each appellant and appellees listed as the amount of medical bills, a review of the exhibit demonstrates appellant's total number was over $600,000 and appellees' total number was approximately $130,000. The jury did not select either of these numbers, and instead awarded appellant $30,000 in economic damages. This determination is within the province of the jury because the "reasonable value of medical services is a matter for the jury to determine from all relevant evidence." *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195. This amount is unrelated to the total amounts contained in Exhibit A, and does not appear to correspond to any payment or group of payments in Exhibit A.

**{¶38}** Appellant lastly contends the trial court committed error in admitting Exhibit A because the exhibit confused the jury. Appellant cited the fact that the jury awarded her only $30,000 for economic loss, which was not an amount appellees argued.

However, as noted above, the Ohio Supreme Court has stated that the "reasonable value of medical services is a matter for the jury to determine from all relevant evidence." *Id.*

**{¶39}** We find the trial court did not abuse its discretion in admitting Exhibit A. Further, assuming arguendo, that the trial court committed error in admitting Exhibit A, we find such error was harmless. Appellant's first assignment of error is overruled.

II.

**{¶40}** In her second assignment of error, appellant argues the trial court committed error when it struck from evidence Medicare Enrollment Form 855(A) and a printout from the Medicare Archives, purporting to show that Altercare of Ohio and TSG were owners of the nursing home when Decedent was a resident. The trial court granted appellees' motion to strike the documents.

**{¶41}** The decision whether to grant or deny a motion to strike is governed by the abuse of discretion standard of review. *Thiemens v. Grange Mut. Cas. Co.*, 5th Dist. Ashland No. 12-COA-027, 2013-Ohio-1643 (grant or denial of motion to strike affidavit filed in support of motion for summary judgment is reviewed on appeal under the abuse of discretion standard).

**{¶42}** Appellant attempted to introduce the documents in her response to Altercare of Ohio and TSG's motion for summary judgment. These documents are not a type of document expressly mentioned in Civil Rule 56(C). However, a trial court may consider a type of document not expressly mentioned in Civil Rule 56(C) if such document is "incorporated by reference in a properly framed affidavit pursuant to Civil Rule 56(E)." *Wachovia Bank of Delaware, N.A. v. Jackson*, 5th Dist. Stark No. 2010-CA-00291, 2011-Ohio-3203. Civil Rule 56(E) provides that affidavits "shall be made on personal

knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." This Court has defined "personal knowledge" as "knowledge gained through firsthand observation or experience, as distinguished from a belief based upon what someone else has said," and "knowledge of factual truth which does not depend on outside information or hearsay." *Wachovia Bank of Delaware, N.A. v. Jackson*, 5th Dist. Stark No. 2010-CA-00291, 2011-Ohio-3203.

{¶43} The documents were attached to the affidavit of appellant's counsel. Counsel's affidavit states, in pertinent part, as follows:

All nursing homes in Ohio and in the entire country file a Medicare Enrollment Form 855(A) with CMS.

In that form they disclose who owned and operated the nursing home.

Attached hereto as Exhibit "D" is a portion of that Medicare Enrollment Application Form 855(A) filed by the Defendants in this case referenced above relative to the Altercare of Hartville Center for Rehabilitation and Nursing Care nursing home. I obtained this application using a Freedom of Information Act Request. The entire application is over 100 pages long so I did not attach it.

Attached hereto as Exhibit "E" is a print out from the Medicare Archives of the information provided by the owners and the operators of nursing homes for the entire country.

Exhibit "D" and "E" clearly indicate that Defendant Altercare of Ohio, Inc.

has had operational and managerial control of the subject nursing home

from October 1, 2001 until August 1, 2018.

**{¶44}** We first note that counsel for appellant does not state in his affidavit that either of the documents are "true and accurate" copies of what they purport to be. Additionally, while public records require no extrinsic evidence of authenticity if properly certified, neither of the documents bore any certification. *Emerson Family Ltd. Partnership v. Emerson Tool, LLC,* 9th Dist. Summit No. 26200, 2012-Ohio-5647. Further, "personal knowledge" must be "gained through firsthand observation or experience." *Bonacorsi v. Wheeling & Lake Erie Railway* Co, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707. While counsel for appellant "would have the requisite personal knowledge to authenticate documents he actually prepared, he did not prepare any of the documents." *Emerson Family Ltd. Partnership v. Emerson Tool, LLC,* 9th Dist. Summit No. 26200, 2012-Ohio-5647. Even if an attorney "had personal knowledge about where he received the documents and received them directly from the keeper of those records, an attestation to that effect does not serve to authenticate them," because documents can be certified correct "only by the custodian of the document or another individual with personal knowledge that the document is what its proponent purports it to be." *Id.*; *State ex rel. Varnau v. Wenninger*, 12th Dist. Brown No. CA2009-02-010, 2011-Ohio-3904, aff'd, 131 Ohio St.3d 169, 2012-Ohio-224, 962 N.E.2d 790. In this case, counsel's affidavit fails to establish the affiant's personal knowledge and fails to affirmatively show the affiant was competent to testify to those matters. Accordingly, the trial court did not abuse its discretion in striking Exhibits D and E.

{¶45} Even if the trial court did commit error in striking the documents, we find any error in the striking of the documents is harmless error. As detailed below, neither of the documents demonstrate that either TSG or Altercare of Ohio were owners or operators of the nursing home on August 4, 2018, Decedent's date of admission. Further, the jury found Altercare of Hartville Rehabilitation Center negligent and in violation of R.C. 3217.21. There is no evidence either Altercare of Ohio or TSG committed any acts separate and distinct from Altercare of Hartville that violated the standard of care or R.C. 3217.21. Appellant's second assignment of error is overruled.

III.

{¶46} In appellant's third assignment of error, she contends the trial court committed error in granting summary judgment to appellees Altercare of Ohio and TSG. Both Altercare of Ohio and TSG filed motions for summary judgment, arguing they are parent corporations, and neither are involved in the day-to-day operations of Altercare of Hartville. Appellant filed a memorandum in opposition to the motions for summary judgment, arguing Altercare of Ohio and TSG were liable because they were "owners" of the nursing home. Appellant attached to his memorandum in response to the motions for summary judgment Exhibit D and E, as described in the second assignment of error, purportedly to show that Altercare of Ohio and TSG were owners of the nursing home.

{¶47} As detailed above in appellant's second assignment of error, we find the trial court did not commit error in striking Exhibits D and E. Further, even if this Court considered the documents, we find they do not create a genuine issue of material fact as to what entity operated the nursing home during Decedent's stay. The "report print date" of the 855(A) form is October 30, 2014, and the October 30, 2014 date is listed on the

bottom right of each page of the exhibit. This was over three years prior to Decedent's admission to the nursing home on August 4, 2018. Further, in the purported "print out from the Medicare archives," the dates for the entities only run until August 1, 2018, which is prior to Decedent's admission to the nursing home. Counsel for appellant states in his affidavit that "Exhibit D and Exhibit E clearly indicate that Defendant Altercare of Ohio, Inc. has had operational and managerial control of the subject nursing home from October 1, 2001 until August 1, 2018." However, August 1, 2018 is prior to Decedent's admission to the nursing home. Appellant presented no evidence to rebut appellees' evidence that Altercare of Hartville Center for Rehabilitation and Nursing Care, Inc., managed and operated the home on August 4, 2018 through August 27, 2018 when Decedent was a resident.

{¶48} Upon our de novo review, we find the trial court did not commit error in granting Altercare of Ohio and TSG's motions for summary judgment.

IV.

{¶49} In her fourth assignment of error, appellant argues the trial court committed error in granting summary judgment on the issue of punitive damages.

{¶50} Punitive damages are available on tort claims under Ohio law only when "the actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud * * *." R.C. 2315.21(C). "Actual malice" for these purposes is: (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174 (1987).

**{¶51}** After appellees filed their motion for summary judgment with regard to punitive damages, appellant filed a memorandum in response, arguing the expert reports of John Russo, M.D., and nurse Catherine Sinclair are sufficient to create a genuine issue of material fact as to punitive damages. Counsel for appellant attached an affidavit to the expert reports. The affidavit states as follows, "[a]ttached hereto as Exhibit A is a true and correct copy of an expert physician, John Russo, M.D. I plan to call Dr. Russo to testify at the jury trial of the above referenced case and to express to the jury the opinions contained in his report," and "[a]ttached hereto as Exhibit B is an expert report from expert nurse Catherine Sinclair. I plan to call Nurse Sinclair to testify at the jury trial of the case referenced above and to express the opinions contained in her report."

**{¶52}** An expert report is not a type of document expressly mentioned in Civil Rule 56(C). However, a trial court may consider a type of document not expressly mentioned in Civil Rule 56(C) if such document is "incorporated by reference in a properly framed affidavit pursuant to Civil Rule 56(E)." *Wachovia Bank of Delaware, N.A. v. Jackson*, 5th Dist. Stark No. 2010-CA-00291, 2011-Ohio-3203. Civil Rule 56(E) provides that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." This Court has defined "personal knowledge" as "knowledge gained through firsthand observation or experience, as distinguished from a belief based upon what someone else has said," and "knowledge of factual truth which does not depend on outside information or hearsay." *Wachovia Bank of Delaware, N.A. v. Jackson*, 5th Dist. Stark No. 2010-CA-00291, 2011-Ohio-3203.

{¶53} In this case, counsel's affidavit does not state Sinclair's expert report is a "true and accurate" copy of her report. While counsel does assert Russo's report is a "true and correct copy," counsel did not attest that he prepared, executed, or perceived preparation of the expert report. The affidavit fails to establish the affiant's personal knowledge and fails to affirmatively show the affiant is competent to testify to those matters. Courts have held that an expert report is not competent evidence sufficient to oppose summary judgment or create a genuine issue of material fact in the absence of a properly framed affidavit. *Heard v. Aultman Hosp.*, 5th Dist. Stark No. 2015CA00141, 2016-Ohio-1076; *Gabriel v. Ohio State University Medical Center*, 10th Dist. Franklin No. 14AP-870, 2015-Ohio-2661; *Smith v. Gold-Kaplan*, 8th Dist. Cuyahoga No. 100015, 2014-Ohio-1424.

{¶54} This Court has previously addressed this issue in *Baxter v. Kendrick*, 5th Dist. Ashland No. 2004-COA-082, 2005-Ohio-1477, in which expert reports were attached to an affidavit of counsel, who attested the exhibits were true and accurate copies of the reports. We found these documents did not meet the requirements of the civil rules, because the reports were not sworn to by the person who wrote them, and the affidavit by counsel was wholly conclusory because the affidavit did not present evidence from which the expert drew his or her conclusion or contain the qualifications of the expert. *Id.* Similarly, in this case, the expert reports were not sworn to by the person who wrote them. Additionally, the affidavit by counsel is wholly conclusory, as the affidavit merely references the opinions of the experts and does not address the issues of fact determinative of the legal issues involved. *Id.*; *Pantages v. Bondy*, 5th Dist. Stark No. CA-6632, 1985 WL 3699 (Nov. 18, 1985); *Lang v. Beachwood Pointe Care Center*, 8th

Dist. Cuyahoga No. 104691, 2017-Ohio-1550; *Fedizczko v. Mahoning County Children's Services*, 7th Dist. Mahoning No. 11 MA 186, 2012-Ohio-6090 (an expert affidavit opining a legal conclusion should not be included in an affidavit to show a genuine issue of material fact); *McDonald v. Lacy*, 2nd Dist. Montgomery No. 27779, 2018-Ohio-2753 (an expert affidavit stating there was a "conscious disregard of, or indifference to, a known and obvious risk to others under the circumstances where there was great probability that substantial harm would result" is an improper legal conclusion).

**{¶55}** The expert reports of Russo and Sinclair are the only documents attached to appellant's memorandum in response. Appellant's sole evidence before the trial court on summary judgment consisted of materials that did not comply with Civil Rule 56(C) or Civil Rule 56(E), and appellees raised a timely objection on that basis by filing a motion to strike. Because appellant failed to submit any proper Civil Rule 56(C) or Civil Rule 56(E) evidence to create a genuine issue of material fact on the issue of malice, the trial court did not commit error in granting appellees' partial motion for summary judgment on the issue of punitive damages. Appellant's fourth assignment of error is overruled.

V.

**{¶56}** In her fifth assignment of error, appellant argues the trial court committed error when it held that she could not discuss applicable sections of the Ohio Administrative Code ("OAC") or the Code of Federal Regulations ("CFR") at trial.

**{¶57}** The parties filed motions in limine regarding the admission and/or discussion of certain sections of the CFR and OAC. A motion in limine is "directed to the inherent discretion of the trial court judge." *Hinerman v. Grill on Twenty First, LLC*, 5th Dist. Licking No. 2020 CA 00054, 2021-Ohio-859. It is a preliminary interlocutory order

and the party's objection must be raised again at trial in order to consider the admissibility of the evidence in its actual context. *Id.* In this case, appellant raised her objections at trial. "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Id.*

**{¶58}** In her motion in limine, appellant stated she sought to introduce multiple sections of 42 CFR 483, including 42 CFR 483.10, 42 CFR 483.12, 42 CFR 483.24, and 42 CFR 483.25. She does not indicate in her motion in limine what OAC regulations she sought to introduce, but did state in her opposition to appellees' motion that she sought to discuss various rules under Chapter 3701-17 of the OAC.

**{¶59}** First, we note that appellant makes no mention of any of the CFR or OAC administrative regulations in her complaint. Additionally, as to the OAC regulations, many of them mirror what is contained in the statutorily codified Nursing Home Bill of Rights. These statutes were argued, discussed, and admitted at trial.

**{¶60}** Next, appellant sought to discuss these regulations, specifically the CFR regulations, to demonstrate the standard of care. Appellant reasoned that since the staff at the nursing home were provided with a copy of the regulations and were taught to comply with these regulations, they had to comply with these regulations to comply with the standard of care. Appellant cites to her expert reports in support of her motion. She specifically cites to Russo's statement that "state and federal regulations were violated in this case" and Sinclair's opinion that the "standard of care requires compliance with the applicable state and federal regulations." However, there is no private remedy for a violation of 42 Chapter 483, et seq., and this section does not create the standard of care

for nursing home residents because these federal regulations contemplate administrative, rather than judicial, enforcement. *Harmon v. St. Augustine Manor*, N.D. Ohio No. 1:06CV2845, 2007 WL 1072164 (April 5, 2007).

**{¶61}** Assuming arguendo that the trial court committed error in excluding any discussion about or the admission of the text of the OAC or CFR administrative regulations, we find this error to be harmless. Ohio and federal courts have held that while a violation of an administrative rule does not constitute negligence per se, a violation of an administrative rule may be admissible as evidence of negligence. *Tomasko v. Sohnly*, 5th Dist. Delaware No. 15-CAE-10-0078, 2016-Ohio-2698 (the violation of an administrative rule does not constitute negligence per se; however, the violation may be admissible as evidence of negligence); *Jackson v. Arka Express, Inc.*, N.D. Ohio No. 3:21 CV 2393, 2022 WL 1136771; *O'Dell v. Vrable III, Inc.*, 4th Dist. Gallia No. 20CA18, 2022-Ohio-4156 (if a fall prevention measure in a nursing home violated a governmental regulation, it cannot be used to assert a claim for negligence per se, but it might be used as evidence of negligence).

**{¶62}** Appellant's argument in both her motion in limine and at trial was that the administrative regulations were probative of the standard of care. The jury found Altercare negligent, and specifically stated in Interrogatory Number 2 that Altercare did not meet the standard of care. Since the administrative regulations would only be admissible or probative to the issue of negligence and the jury found in favor of appellant on the issue of negligence, any error did not affect the substantial rights of appellant, as the administrative regulations could not have changed the outcome in a way favorable to appellant.

**{¶63}** Appellant briefly mentions in this assignment of error that the trial court's ruling violated the judicial notice provision of Ohio Civil Rule 44.1 and did not comport with the language contained in 1 OJI CV 311.09. We first note that appellant did not separately list these as assignments of error. Ohio Civil Rule 44.1(A)(2) provides that the trial court may take judicial notice of the administrative regulations at issue; however, the rule does not require the court to take judicial notice of the administrative regulations at issue. We find no abuse of the trial court's discretion in denying to take judicial notice of the administrative regulations, and additionally find any error in the exclusion of them is harmless error.

**{¶64}** With regards to the OJI section, during trial, appellant requested the trial court provide the instruction in 1 OJI CV 311.09, which provides that even if the violation of the OAC or CFR was not negligence per se, "you will consider the standard of care required by this law and decide whether such party used the degree of care required. In this particular case, Plaintiff is prepared to offer expert testimony that the staff at the nursing home did not exercise the degree of care required by these statutes, and, as a result, that is relevant to the jury's determination that the staff was negligent * * *." As detailed above, the jury found the staff at the nursing home violated the standard of care and was negligent. Thus, any error in not admitting the OAC, CFR, or the particular jury instruction is harmless because the error did not affect the substantial rights of the adverse party. The jury found in favor of appellant on the standard of care and negligence issue.

**{¶65}** Appellant's fifth assignment of error is overruled.

VI.

**{¶66}**  In her sixth assignment of error, appellant contends the trial court committed error when it denied her motion for reconsideration of the granting of the motion for summary judgment on punitive damages and the granting of appellees' motion in limine to preclude reference to federal and state regulations.

**{¶67}**  Based upon our analysis and disposition in appellant's fourth and fifth assignments of error, we find the trial court did not commit error in denying appellant's motions for reconsideration.  Appellant's sixth assignment of error is overruled.

**{¶68}**  Based on the foregoing, appellant's assignments of error are overruled. The June 21, 2022 judgment entry of the Stark County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Wise, J., and

Delaney, J., concur